**Dean W. GOSS, Appellant,**

v.

**MEDICAL SERVICE OF the DISTRICT OF COLUMBIA, et al., Appellees.**

**No. 81–1276.**

District of Columbia Court of Appeals.

Argued April 5, 1983.

Decided June 13, 1983.

Thomas E. Dunigan, Washington, D.C., for appellant.

Kevin W. Carmody, with whom Charles J. Steele and Jacqueline M. Saue, Washington, D.C., were on brief for appellees.

Before NEWMAN, Chief Judge, and FERREN and TERRY, Associate Judges.

NEWMAN, Chief Judge:

This is an appeal from the court's ruling that the placement of crowns and bridges on the teeth in the course of treatment of temporomandibular joint syndrome constituted dentistry and hence was properly excluded from coverage in appellees' insurance contract. Appellant also appeals the trial court's denial of class certification and accompanying motion to compel discovery. We conclude that the purpose for the placement of crowns and bridges on Mrs. Goss' teeth was medical, not dental, and hold that the Gosses should have been reimbursed by appellees. We further hold, however, that the trial court did not abuse its discretion in denying the Motion for Class Certification.

I

Appellees, Medical Service of the District of Columbia and Group Hospitalization Inc., entered into a medical health benefits con-

tract with the Transit Employee's Health and Welfare Fund of the Washington Metropolitan Area Transit Authority (hereinafter WMATA). Under the terms of this contract, appellees provide benefits for hospitalization, surgical-medical and related medical care to the providers of such services when the service is rendered to an employee of WMATA who elects coverage under the contract. The contract provisions at issue in this case are as follows:

ARTICLE VII—BENEFITS

1. Benefits for Medical Expenses as defined under Paragraph 6 of this Article shall be provided by the Corporation.

\* \* \* \* \* \*

6. Medical Expenses—The term "Medical Expenses" as used in this Article shall mean the . . . charges for the following *necessary* medical services, supplies, and treatment of an Illness: (emphasis in original).

\* \* \* \* \* \*

b. (1) Charges made by a Physician for medical care or the performance of a surgical service;

\* \* \* \* \* \*

ARTICLE VIII—EXCLUSIONS

1. Medical expense shall not include charges for or in connection with:

a. Dentistry . . .

Appellant, an employee of WMATA, elected coverage. Appellant's wife, Judith Goss, was also covered. Thus, any expense which she incurred for allowable services or treatment was covered.

In May 1977, Mrs. Goss went to see Dr. Stack, D.D.S., for the severe facial pain and headaches she had been suffering for over five years. Dr. Stack diagnosed her condition as temporomandibular joint syndrome (TMJ). His treatment consisted of creating, inserting and periodically adjusting an acrylic "splint" which fit over Mrs. Goss' lower teeth. The purpose of the splint was to move the lower jaw forward to prevent the condyle from pressing backward and striking nerve filaments and thus relieve

Mrs. Goss of her pain. The treatment relieved the pain; however, it created a gap (malocclusion) between her upper and lower teeth. Dr. Stack referred Mrs. Goss to Dr. Heiner, D.D.S., for the placement of crowns and bridges in order to maintain the jaw position Dr. Stack had achieved and to correct the malocclusion. Without this treatment, Mrs. Goss' jaw would have reverted it its old position and her symptoms recurred.

Appellant submitted two claims relating to the treatment rendered by Dr. Stack. These claims, which covered X-rays and consultation, and the creation, insertion and adjustment of the mandibular splint, were paid.

Appellant submitted one claim for a portion of the expenses incurred by him for Dr. Heiner's treatment. Appellees covered a portion of the office visit but denied coverage for the balance of $1,405.00, asserting that such charges were for "dentistry" and hence excluded from the insurance contract. Appellant was billed an additional $690.00 by Dr. Heiner but he did not submit a claim for this sum because it would have been denied for the same reason.

Mr. Goss filed his complaint on January 7, 1980. His attorneys knew of two other cases in which appellees had denied coverage for TMJ, and decided to investigate the possibility of a class action. In February 1980, Goss filed a set of interrogatories and request for product of documents concerning the number and identity of potential members of a class action and appellees' treatment of the proposed class. These interrogatories asked for information on paid claims, rejected claims, review procedures, and documents from the review process for claimants who had been treated for TMJ. In April 1980, appellees filed their answers to appellant's interrogatories objecting to all inquiries concerning other potential members of the proposed class. At the same time they filed a Motion to Strike Class Allegations. By Order dated August 28, 1980, Judge Fred L. McIntyre granted, in part, appellees' Motion to Strike Class

Allegations, but granted leave to refile his class allegations. He also denied appellant's Motion to Compel Discovery.

On January 23, 1981, appellant filed an Amended Complaint, Motion for Class Certification and Motion for Reconsideration of the court's denial of his Motion to Compel Discovery. The Motion for Certification was filed a year after the suit was instituted and nine months after the date required by SCR 23–I(b)(1). Judge McIntyre ruled, on February 26, 1981, that class certification was not appropriate on the specific ground that the issue of medical necessity was involved, thereby requiring the adjudication of fact and law on a case by case basis. He never ruled on the Motion to Compel Discovery because the denial of class certification made the issue moot.

This matter was then reassigned to Judge John Doyle. A nonjury proceeding regarding the Goss' individual claims was held on August 14, 1981. As all of the facts had been stipulated prior to trial, the hearing was limited to the presentation of expert testimony. Dr. Stack and Dr. Heiner testified for the appellant. Dr. Lewis Mercuri, D.D.S., testified for appellees. On August 25, 1981, Judge Doyle issued a Final Order in favor of appellees and dismissed the action on its merits.

## II

The issue in this case is whether Dr. Heiner's treatment and services, in providing crown splints and a bridge to Mrs. Goss for TMJ, are excluded from coverage under the insurance contract as falling within the meaning of the term "dentistry" as it appears in the exclusionary provision of the contract.[1] The term "dentistry" is not defined in the contract. Appellees contend that coverage is provided on the basis of services rendered and not on the basis of diagnosis or purpose of treatment. Thus, they argue, as Dr. Heiner's treatment consisted of putting crowns and bridges on Mrs. Goss' teeth, reimbursement for these services was properly excluded as "dentist-

ry." Appellant argues that Dr. Heiner's treatment can not be described in a vacuum. Rather, his treatment should be considered in light of the objective both he and Dr. Stack were attempting to achieve, the medically necessary correction of a malpositioned jaw.

■ The trial court adopted appellees' mode of analysis and found that "crown and bridge work constitutes dentistry." This finding was based, in significant measure, on an unwarranted reliance on the statutory definitions of "dentistry" in the District of Columbia and Virginia Codes. In the Virginia licensing statute, dentistry is defined as "the treatment of any of the diseases or lesions of the oral cavity, its contents or contiguous structures, the extraction of teeth, the correction of malpositions of the teeth and jaw, ..." Va.Code § 54–146 (1950). The District's licensing statute defines dentistry as the diagnosis or treatment of "disease, pain, deformity, deficiency, injury or physical condition of human teeth, jaws or adjacent structures." D.C.Code § 2–315 (1973). The trial court's reliance on statutory definitions for guidance was inappropriate as there is no evidence that the parties who negotiated the contract intended to incorporate these definitions. Furthermore, given the goals of licensing regulations, to encompass all borderline cases and thus protect the citizenry from untrained dental professionals, it is logical that the statutory definition would be exceedingly broad.

■ The conduct of the appellees contradicts the broad definition preferred by the trial court. Dr. Stack's services were the first component of treatment of TMJ; he used the splint to place Mrs. Goss' jaw in a more physiologically proper position. Appellants were reimbursed for expenses incurred for Dr. Stack's treatment. Dr. Heiner's services were the second component of treatment for TMJ. To maintain the jaw position achieved by Dr. Stack, it was medically necessary to insert crowns

1. The "medical necessity" of Mrs. Goss' treatment was not disputed.

and bridges. There was no need for the crown and bridge work independent of the TMJ.[2] Appellants, however, were not reimbursed for payments made to Dr. Heiner. If the appropriate definition of dentistry includes the correction of malpositions of the jaw, there is no logical justification for the reimbursement of Dr. Stack's services while denying coverage for Dr. Heiner's services.

Finally, the facts of this case belie the trial court's determination that this treatment was dental. The services performed on Mrs. Goss' teeth were directly related to, and required by, the medical condition of Mrs. Goss' jaw. The treatment was not required to, and did not treat any condition of Mrs. Goss' teeth or tooth relationship as Mrs. Goss' teeth were in perfect condition. The only reason this treatment resembles dentistry is the fortuity that Mrs. Goss' teeth were used to support the devices required to stabilize the position of her jaw.[3]

We therefore conclude that the trial court erroneously interpreted the insurance contract when it ruled that treatment for TMJ was excluded. As the trial court's interpretation was not based on oral testimony, we are fully competent to substitute our own interpretation of the term "dentistry". *See In re Estate of Wiley,* 331 A.2d 343 (D.C. 1975). We hold that the treatment rendered Mrs. Goss was not dentistry[4] as that term appears in the insurance contract.

### III

■ A class action was inappropriate in this case as appellant's proposed class did not meet the requirements of Super.Ct. Civ.R. 23(a). Rule 23(a) permits class actions where (1) joinder is impractical, (2) there are common questions of law or fact,

(3) the claims or defenses of the representative parties are typical of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. The party seeking class certification has the burden of demonstrating that each requirement has been met. *Graybeal v. American Savings & Loan Association,* 59 F.R.D. 7 (D.D.C.1970). Appellant defined his proposed class as follows: all persons who (1) have medical insurance with appellees under the same or substantially similar contract as the appellant, (2) who suffer or will suffer from TMJ, (3) who receive or will receive as the second stage of treatment for TMJ, treatment similar or the same as the treatment given Mrs. Goss, and (4) who have been or will be refused coverage on the grounds that said TMJ treatment is dental. Appellant did not require that potential class members also establish the medical necessity of their treatment of TMJ.

■ A determination of the medical necessity of any treatment requires individualized review. *Group Hospitalization, Inc. v. Levin,* 305 A.2d 248 (D.C.1973). *See also Group Hospitalization, Inc. v. Westley,* 350 A.2d 745 (D.C.1976). The necessity of such individualized inquiries defeats the purpose of a class action, the efficient and judicially economic adjudication of the rights of a large number of persons in a single action. Without such inquiry, however, it is impossible to determine whether there were common questions of law or fact as required by Rule 23. It is conceivable that some potential class members might have been, or may be, legitimately denied coverage on the ground that the treatment, using crowns and bridges, was or may not be medically necessary. Thus, the trial court's denial of

---

**2.** Indeed the crowns and bridges were not employed in the usual manner. The normal use of crowns is to repair badly decayed teeth which can no longer support fillings and which are subject to rampant decay. No such condition was present in Mrs. Goss' mouth.

**3.** *See Simpson v. State Mutual Life Assur. Co. of America,* 135 Vt. 554, 382 A.2d 198 (Vt.

1977), in which the repositioning of plaintiff's jaw by the installation of oral prosthetic devices in treatment of TMJ was not considered dentistry.

**4.** To avoid future litigation of this ilk, we suggest appellees include in the insurance contract a comprehensive definition of "dentistry."

the Motion for Class Certification was not improper.

*Reversed in part and affirmed in part.*